SUMMARY MEMORANDUM AND OPINION; NOT INTENDED FOR PUBLICATION.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEVIN C. FORD,**<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**CRANSTON MITCHELL,** et. al,<br><br>　　　　　　Defendants. | Civil Action No. 10-cv-1517 (RLW) |

### MEMORANDUM OPINION

Plaintiff Kevin C. Ford ("Ford") brings causes of action pursuant to 42 U.S.C. § 1983 and, alternatively, <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), for unlawful seizure under the Fourth Amendment (Count I), and over detention under the Fifth Amendment (Count II) against Defendants Bureau of Prisons ("BOP") officials Jane and John Does 1-2 (collectively "BOP Defendants") in their individual capacities; the United States Parole Commission ("USPC") officials Cranston Mitchell, Isaac Fulwood, Helen A. Herman, Lori Gobble, Joann L. Kelly, and Jequan S. Jackson (collectively "USPC Defendants") in their individual capacities; and Community Supervisor Officer Court Services and Offender Supervision Agency for the District of Columbia ("CSOSA") officials Saher Khan, Jessica Stigall, and Verna Young (collectively "CSOSA Defendants") in their individual capacities. Ford also brings claims pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), for negligence (Count III) against all the United States of America, and an action for negligence per se against the BOP Defendants (Count IV) in their individual capacities. Ford requests compensatory and punitive damages, and attorney's fees and costs.

This matter is before the Court on Defendants' partial Motion to Dismiss Counts I, II, and III pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  Fed. R. Civ. P. 12(b)(1), 12(b)(6).  The USPC and CSOSA Defendants move to dismiss Counts I and II because they are either absolutely immune from suit or protected by qualified immunity.  The USPC and CSOSA Defendants contend that Plaintiff's FTCA claim in Count III should be dismissed because the intentional tort exception, 28 U.S.C. § 2680(h), bars Ford's negligence claims.  For the following reasons, the USPC and CSOSA Defendants' partial Motion to Dismiss Counts I, II, and III is granted.[2]

## I. BACKGROUND

On September 25, 2001, Ford was arrested and charged in the Superior Court for the District of Columbia with distribution of heroin.  Am. Compl. ¶ 27.  Ford was jailed for 23 days and then released to supervisory custody pending trial on October 17, 2001.  Id.  After Ford failed to appear for his arraignment, a "no bond" bench warrant was issued and Ford was arrested on May 6, 2002.  Id. at 28.  On September 17, 2002, Ford pled guilty to attempted distribution of heroin and was sentenced to serve twelve months in prison, followed by ninety days of supervised release.  Id. at 29.  This sentence was suspended to all but time already served, and Ford was instead placed on supervised probation.  Id.  The first three months of Ford's supervised probation were to be served at a halfway house where Ford was already located.  Id.  On December 17, 2002, Ford was released to the community on supervised probation.  Id. at 30.  On May 22, 2003, a CSOSA employee submitted a probation violation

---

[1] The Bureau of Prisons ("BOP") Defendants did not move to dismiss any of the claims asserted against them.

[2] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

report to the Superior Court alleging that Ford had violated the terms of his supervised probation. Id. at 31.  Ultimately, a bench warrant was executed on July 7, 2003, and Ford was held in the custody of the District of Columbia Jail until the disposition of his probation violation charges. Id.  At his disposition hearing on July 24, 2003, the court reinstated Ford's original sentence of one year in jail with credit for time served and three months of supervised release.  Id. at 32.  On December 17, 2003, Ford was released from imprisonment and began serving his three months of supervised release.  Id. at 32.

On February 17, 2004, Defendant Helen Herman requested a warrant be issued for Ford's arrest based on allegations that he had violated the terms of his supervised release.  Id. at 34, 46. The USPC issued a warrant signed by Defendant Mitchell on February 17, 2004, and Ford was arrested on July 26, 2004.  Id.  Ford agreed to a consent disposition with the USPC and was sentenced to a new twelve-month term of imprisonment, followed by a 48-month period of supervised release.  Id.

On February 1, 2006, Defendant Jackson requested a warrant based on Ford's violation of the conditions of his supervision.  Id. at 50.  That warrant was executed and Ford was taken into custody on August 17, 2006.  Id. at 35.  Ford agreed to another consent disposition and was sentenced to a new term of twelve months in prison, followed by thirty-six months of supervised release.  Id.  Upon release from imprisonment on August 10, 2007, Ford began serving his thirty-six months of supervised release.  Id. at 37.

On June 29, 2007, Ford filed a *pro se* petition for a writ of habeas corpus challenging the calculation of his sentence and supervised release on the grounds that he did not receive credit for all the time he had served prior to his incarceration in July 2003.  See Ford v. Caulfield, 652 F. Supp. 2d 14 (D.D.C. 2009).  The court determined that Ford should have received credit for

the period between his arrest on July 7, 2003 through the Superior Court's disposition on July 24, 2003. Id. at 19. The court further determined that Ford's term of imprisonment expired before he was actually released and, consequently, Ford's term of supervised release ended prior to the issuance of the February 17, 2004 arrest warrant. Id. at 20. The court granted Ford's habeas petition and released him from supervised release, concluding that "the Commission's February 17, 2004 arrest warrant was void, and that neither Ford's arrest on July 26, 2004 pursuant to the Commission's warrant nor anything that flowed from that arrest was duly authorized by law." Id. at 22.

Ford's lawsuit alleges that several USPC and CSOSA employees, whose alleged acts led to the issuance and execution of February 17, 2004 warrant and the subsequent periods of detention and supervised release that flowed from his July 26, 2004 arrest, violated his rights under the Fourth and Fifth Amendments. Ford also raises tort claims under the FTCA against the United States by charging employees of BOP, USPC, and CSOSA with negligence. Ford seeks damages from the USPC and CSOSA Defendants in their individual capacity.

## II. DISCUSSION

### A. Standards of Review

The USPC and CSOSA Defendants have moved to dismiss Counts I and II of the amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion, the court liberally construes the complaint in favor of the non-moving party and grants all reasonable inferences to the

nonmovant that can be derived from the facts alleged in the complaint. Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003).

The Defendants have moved to dismiss Count III of the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted); see also Beethoven.com LLC v. Librarian of Cong., 394 F.3d 939, 945 (D.C. Cir. 2005). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction. Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). The "nonmoving party is entitled to all reasonable inferences that can be drawn in her favor." Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998) (emphasis omitted).

### B. Ford Fails to State Individual Capacity Claims against CSOSA and USPC under either § 1983 or Bivens

Ford asserts claims for civil damages under 42 U.S.C. § 1983 against all the Defendants in their individual capacities because, as Ford contends, the Defendants acted under color of D.C. law pursuant to the Revitalization Act. Alternatively, Ford asserts his constitutional claims as a Bivens action if the Court finds that the Defendants acted pursuant to federal law. Ford contends that: (1) he was deprived of his right to be free from unreasonable seizure in violation of the Fourth Amendment because the Defendants' actions resulted in his arrest and imprisonment; and (2) he was deprived of his liberty interest without due process of law in violation the Fifth Amendment because he was subjected to cycles of wrongful detention and supervised release beginning on July 26, 2004.

Section 1983 provides, in pertinent part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  In order to state a claim under § 1983, Ford must show that the Defendants acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acing under color of state law.").  Plaintiffs may bring § 1983 claims for civil damages against government officials acting under color of state law in their individual capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  On the other hand, a Bivens action is "the federal analog to suits brought against state officials under . . . § 1983."  Iqbal, 556 U.S. at 675; see also Bivens, 403 U.S. at 397 (permitting suits against federal actors for constitutional violations).

The D.C. Circuit has held that the USPC and USPC employees are amenable to suit under § 1983.  See e.g., Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005); Fletcher v. District of Columbia, 370 F.3d 1223, 1227 (D.C. Cir. 2004).  However, the D.C. Circuit has not extended Settles to CSOSA employees and, therefore, CSOSA employees are not ameneable to suit under Section 1983.  See Johnson v. Fenty, Civil Action No. 10-5105, 2010 WL 43403444, at *1 (D.C. Cir. Oct. 1, 2010) (affirming dismissal of Section 1983 claims against CSOSA officials in their officials capacities because Section 1983 "does not apply to federal officials acting under color of federal law").  Therefore, the proper avenue for relief against the CSOSA officials is under Bivens.

Defendants argue that absolute immunity bars Ford's claims against the USPC and CSOSA Defendants because the decisions that Ford challenges are all part of CSOSA and USPC's exercise of quasi-judicial power. "Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process." Wagshal v. Foster, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (collecting cases). Indeed, courts have held that quasi-judicial absolute immunity applies to members of a parole board and to parole officers. See Pate v. United States, 277 F. Supp. 2d 1, 10-11 (D.D.C. 2003) (holding that the members of the D.C. Parole Board were entitled to absolute immunity against the claim that they violated the parolee's constitutional rights when they failed to provide him with a timely parole revocation hearing); see also Reynolds El v. Husk, 273 F. Supp. 2d 11, 13 (D.D.C. 2002) (extending absolute immunity to a Commission case examiner).

Ford concedes that courts have uniformly extended aboslute immunity to parole board members and commissioners who perform adjudictory functions—specifically, when they decide to grant, deny, or revoke parole. See Walrath v. United States, 35 F.3d 277, 281 (7th Cir. 1994) (collecting cases from the First, Seventh, Eighth and Ninth circuits); see also Montero v. Travis, 171 F.3d 757, 761 (2nd Cir. 1999) (collecting cases from the Tenth and Eleventh circuits) ("We join our sister circuits and hold directly that parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."). However, Plaintiff contends that the challenged conduct in this case—requesting and signing an arrest warrant and certificate of supervised release, requesting and signing a warrant application, and signing an expedited revocation determination—is not adjudicative. Instead, Plaintiff argues that this conduct is

administrative or ministerial in nature and, therefore, the CSOSA and USPC Defendants are not entitled to absolute immunity for the challenged conduct.

The allegations of the complaint, taken as true and viewed in the light most favorable to the plaintiff, do not clearly indicate that all the CSOSA and USPC Defendants are entitled to absolute immunity.  The conduct of some of the Defendants was adjudicatory and/or prosecutorial in nature, and the conduct of others was investigatory of administrative.  Therefore the Court must examine the conduct of each Defendant to determine whether he or she performed a function for which absolute immunity is required.  See Cleavinger v. Saxner, 474 U.S. 193, 201 (1985) (courts generally take a functional appraoch when determining whether an official receives qualified or absolute immunity; the level of immunity "flows not from rank or title or 'location within the Government,' but from the nature of the [official's] responsibilities").

### 1. USPC Commissioners Mitchell and Fulwood are entitled to absolute immunity

Ford alleges that USPC Commissioners Mitchell and Fulwood violated his constitutional rights by signing invalid arrest warrants on February 17, 2004 and February 2, 2006, respectively.  Am. Compl. ¶¶ 47, 51, 62, 66.  Commissioners Mitchell and Fuller are entitled to absolute immunity because their discretionary decisions to sign the arrest warrants based on Defendants Herman and Jackson's warrant applications is a quasi-judicial function.  Indeed, "[t]he issuance of an arrest warrant has several key characteristics in common with a judicial act: it involves the exercice of discretion in applying the law to the facts of a particular case, poses a heightened risk of vexatious litigation, and is 'open to correction through ordinary mechanisms of review.'" Walrath, 35 F.3d at 282 (citing Forrester v. White, 484 U.S. 219, 227 (1988)).  Mitchell and Fuller merely made a discretionary decision based on the information presented to them by Herman and Jackson that there was probable cause to believe that Ford had violated the

terms of his supervised release. Mitchell and Fuller's acts of signing the arrest warrants are therefore absolutely immune from suit.[3]

### 2. The CSOSA and USPC Defendants are entitled to qualified immunity

According to the Amended Complaint, Defendants Khan and Stigall proximately caused and contributed to Ford's unreasonable siezure and overdetention by unlawfully requesting that arrest warrants be issued for him on February 10, 2004 and December 27, 2005. Am. Compl. ¶¶ 45, 48, 60, 63. In addition, Ford alleges that Defendant Young contributed to his unreasonable seizure and overdetention by supporting the request of her suprvisee, Defendant Stigall, that an arrest warrant be issued on December 27, 2005. Am. Compl. ¶¶ 49, 64.

Ford alleges that USPC Defendants Herman and Jackson proximately caused and contributed to his unreasonale seizure and overdetention by signing invalid warrant applications on February 17, 2004 and February 1, 2006. Am. Compl. ¶¶ 46, 50, 55, 6,. Ford also alleges that Defendant Gobble contributed to his unlawful seizure and over detention by signing multiple proposals for expedited revocation determinations. Am. Compl. ¶¶ 52, 67. With respect to Defendant Kelley, Ford alleged that she proximately caused and contributed to his unlawful seizure by signing an unlawful certificate of supervised release on May 17, 2005. Am. Compl. ¶¶ 53, 68.

Khan, Stigall, and Young's conduct here does not constitute an adjudicative decision to grant, deny, or revoke parole. Rather, these Defendants only recommended that a warrant be issued for Ford's arrest, a non-adjudicatory function. Therefore, none of these Defendants are entitled to absolute immunity. See Russ v. Uppah, 972 F.2d 300, 303 (10th Cir. 1992) (granting absolute immunity to parole board members for quasi-judicial act of revoking parole, but

---

[3] As discussed in section II(B)(2), even if the Court were to find that Miller and Fuller are not entitled to absolute immunity, they are protected by qualified immunity.

denying immunity to parole officer who reccomended revocation); Scotto v. Almenas, 143 F.3d 105, 111 (2nd Cir. 1998) (denying absulute immunity to parole offier who reccomended that an arrest warrant be issued); Johnson v. Williams, 699 F. Supp. 2d 159, 167-68 (D.D.C. 2010) (collecting cases). Likewise, USPC Defendants Herman and Jackson are not entitled to absolute immunity because they performed the non-discretionary function of signing warrant applications, while other officials performed the adjudicatory function of signing the warrants and issuing them. Although Gobble's conduct—signing proposals for expedited revocation hearings—is related to the adjudicatory function of revoking parole, it is not protected by absolute immunity because another official made the discretionary prosecutorial decision to issue the order for a revocation hearing. See Swift v. California, 384 F.3d 1184, 1192-93 (9th Cir. 2004) (concluding that parole officers were not entitled to absolute immunity because actions requesting revocation proceedings "were more akin to a police officer seeking an arrest warrant, than to a prosecutor exercising quasi-judicial discretion to initiate criminal proceedings").

Nonetheless, Defendants argue that they are all entitled to qualified immunity, which shields government officials from suit when performing certain discretionary functions. "Generally, when a plaintiff sues a governement agent in his individual capacity and the government agent raises a qualified immunity defense, the plaintiff must overcome the qualified immunity defense in order to survive a Rule 12(b)(6) motion to dismiss." Ennis v. Lott, 589 F. Supp. 2d 33, 36-37 (D.D.C. 2008).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The relevant dispositive inquiry under this standard is "whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, --- U.S. ---, ---, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).

The CSOSA and USPC are protected by qualified immunity because they acted reasonably in light of the situation they confronted. It has already been determined that Ford's constitutional rights were violated. See Ford, 652 F. Supp. 2d at 22. The fact that the court concluded in Ford's habeas action that his rights were clearly violated does not mean that the defendants should have known that they were violating Ford's rights. Elkins v. District of Columbia, Civil Action Nos. 10-7060, 10-7069, 2012 WL 3240301, at *10 (D.C. Cir. Aug. 10, 2012). The appropriate question to ask is whether it would have been clear to a reasonable officer in Defendants' situation that their conduct was unlawful. Id. It is well settled that it is the United States Attorney General (through the BOP) who is responsible for computing an offender's federal sentence, including both commencement and release dates, and any jail-time cedit to which the federal offender may be entitled under 18 U.S.C. § 3585(b). United States v. Wilson, 503 U.S. 329, 332, 334-45 (1992). The CSOSA and USPC officials reasonably relied upon the BOP's computation of Ford's sentence. Moreover, it was reasonable for the USPC and CSOSA officials to interpret the sentencing order to mean that Ford would be under supervised release for three months after the date of his release. Notwithstanding Ford's allegations that he made requests to both Khan and Gobble that his sentence be recalculated, it would not be clear to a reasonably competent officer that issuing a warrant and initiating a revocation hearing would result in violation of Ford's Fourth and Fifth Amendment rights. Ford's injuries occurred "due

to an error by the executive authority" based on mixed questions of fact and law concerning the start date of Ford's supervised release. Ford, 652 F. Supp. 2d at 21. An official could reasonably believe that Ford's violation of the conditions of his supervised release, within three months of his release from incaeration, provided probable cause for the issuance of an arrest warrant, and the subsequent decisions that led to Ford's incarceration. Therefore it would not be clear to "a reasonable officer . . . in the situation [the Defendants] confronted" that requesting a warrant and signing a warrant application would result in a violoation of Ford's rights under the Fourth and Fifth Amendments. Saucier, 533 U.S. at 202. Although the actions of Defendants were ultimately found to be mistaken, they were not unreasonable. Pearson v. Callahan, 555 U.S. 223, 244 (2009). Thus, the constitutional claims brought against the USPC and CSOSA Defendants in their individual capacities in Counts I and II will be dismissed pursuant to Rule 12(b)(6) because they are entitled to qualified immunity.

### III.     The Court Lacks Subject-Matter Jurisdiction over Ford's FTCA Claims

Count III of Ford's amended complaint alleges a claim for negligence under the FTCA against the United States. Defendants move to dismiss Count III for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Ford's FTCA claims are barred by the intentional tort exception.

"The United States is immune from suit unless it waives its sovereign immunity through an act of Congress." Hayes v. United States, 539 F. Supp. 2d 393, 397 (D.D.C. 2008) (citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). In a suit against the United States, the plaintiff "bears the burden of proving that the government has unequivocally waived its immunity for the type of claim involved." Hayes, 539 F. Supp. 2d at 397 (citation omitted). The government has waived its immunity regarding "negligent or wrongful act[s] or omission[s] of any employee of

the government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). However, the FTCA sets out certain categories of claims that are excluded from the purview of the Act. The intentional tort exception of the FTCA excludes any claims "arising out of assault, battery, false imprisonment, [or] false arrest . . ." so long as these torts are not committed by a law enforcement officer of the United States Government. 28 U.S.C. § 2680(h).

The Defendants contend that Ford's FTCA claims falls within the ambit of the intentional tort exception because his claims, though couched as negligence claims, are actually claims for false arrest and false imprisonment. Ford argues that his FTCA claims sound in negligence because the allegations in the Amended Complaint state the Ford's injuries were the proximate result of errors on the part of government officials. For example, Ford alleges that Defendant Khan "negligently submit[ed] a supervised release violation report and request[ed] that an arrest warrant be issued." Am. Compl. ¶ 77. Similarly, Ford alleges that defendant Gobble "negligently sign[ed] multiple proposals for expedited revocation determinations." Am. Compl. ¶ 84.

Taken at face value, it would appear that Ford's allegations sound in negligence. However, the law in this Circuit requires the court to "scrutinize the alleged cause of [Ford's] injury" when assessing the nature of his claims. Kugel v. United States, 947 F.2d 1504, 1506 (D.C. Cir. 1991) (citing Block v. Neal, 460 U.S. 289, 297 (1983); see also Snow-Erlin v. United States, 470 F.3d 804, 808 (9th Cir. 2006) (noting that courts "look beyond [the party's] characterization to the conduct on which the claim is based," and that "if the gravamen of Plaintiff's complaint is a claim for an excluded tort under § 2680(h), then the claim is barred"). Although Ford's Amended Complaint makes several references to the Defendants' negligent acts, the harm that Ford alleges that he suffered is "harm to his person" and deprivation of his

13

"dignity, liberty, and property." Am. Compl. ¶ 89.  It appears that the cause of Ford's injuries was not the Defendants' various alleged negligent acts and omissions, but rather the subsequent false arrest and false imprisonment that flowed from those actions.  Indeed, had the Defendants miscalculated the duration of Ford's supervised release and requested arrest warrants be issued, but not arrested and detained Ford, Ford's Amended Complaint suggests that he would not have suffered any damage.  For these reasons, Ford's damages arise out of his false arrest and/or false imprisonment, not the alleged negligent actions of the USPC and CSOSA Defendants.  See Kugel, 947 F.2d at 1507 (concluding that plaintiff's claims, though couched in terms of negligence, sounded in defamation and were therefore barred under FTCA); see also Snow-Erlin, 470 F.3d at 809 (holding that plaintiff could not sidestep the FTCA's exclusion of false imprisonment claims by suing for the damage of false imprisonment under the label of negligence).  Accordingly, the Court finds that Ford's claims under the FTCA arise out of false arrest and false imprisonment.

Having found the Ford's claims sound in false arrest and false imprisonment, the Court will only have subject matter jurisdiction over his FTCA claim if the Court determines that the USPC and CSOSA Defendants fall within the "investigative or law enforcement officer" exception under § 2680(h).  Although the FTCA retains the government's immunity from suits predicated on claims arising out of false arrest and false imprisonment, the government's sovereign immunity is nevertheless waived if the challenged conduct is committed by an "investigative or law enforcement officer." 28 U.S.C. 2680(h).  The "investigative or law enforcement officer exception" does not apply to the CSOSA or USPC Defendants. The FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of

federal law." Id.  The USPC employees are not investigative or law enforcement officers within the meaning of the FTCA.  See Wilson, 959 F.2d at 15.  Likewise, CSOSA officers do not have the authority to make arrests, and only have authority to recommend that the USPC issue a warrant.  Therefore, because the USPC and CSOSA Defendants are not "law enforcement officers" within the meaning of the FTCA, Ford's claims must be dismissed.

### IV. CONCLUSION

Based on the foregoing, the Court finds that Ford's § 1983 and Bivens claims are barred by qualified immunity.  The FTCA claims against the USPC and CSOSA Defendants are barred by the intentional tort exception.  Therefore, Counts I, II, and III will be dismissed against the USPC and CSOSA Defendants.  A separate order accompanies this Memorandum Opinion.

    SO ORDERED.

September 10, 2012

                                            Robert L. Wilkins
                                            United States District Judge